IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cr-30330-DWD |
| | ) |
| DEMARIO MALONE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Now before the Court is Defendant Demario Malone's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 256). Defendant is currently serving a 130-month term of imprisonment on convictions related to marijuana trafficking (Doc. 187; Doc. 193). At the time he filed his compassionate release motion, Defendant was housed at USP Marion (Doc. 256). However, current records from the Federal Bureau of Prisons ("BOP") indicate that he is now located at Memphis FCI. *See Find an Inmate*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc (last accessed Dec. 7, 2022).[1] Defendant's projected release date is November 18, 2023 (Doc. 256, p. 7). Defendant asks this Court to reduce his sentence to time served. The Government opposes the motion (Doc. 262), and Defendant filed a reply (Doc. 263). For the following reasons, the motion will be denied.

---

[1] Neither Defendant nor his counsel disclosed Defendant's updated location to the Court or indicated when Defendant was transferred to Memphis FCI.

1

## Procedural History

A superseding indictment charged Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 1000 kilograms or more of Marijuana, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846 (Count 1) and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2) (Doc. 75). The conspiracy was alleged to have involved more than 1000 kilograms of Marijuana, however, pursuant to a written plea agreement, Defendant agreed to enter a guilty plea to the lesser included offense of conspiracy to distribute and possess with the intent to distribute over 50 kilograms of Marijuana (Doc. 131). Defendant further admitted that he knowingly possessed a firearm during the timeframe of the conspiracy and in furtherance of the conspiracy (Doc. 130).

On November 1, 2013, Defendant pled guilty to both counts (Doc. 128). Former Chief Judge David R. Herndon accepted Defendant's guilty plea on November 19, 2013 (Doc. 135). Defendant's plea involved a written agreement containing broad appellate and collateral-attack waivers (Doc. 131); *see also Malone v. Sproul*, SDIL No. 18-714-DRH, at Doc. 15-1 (order affirming dismissal of Defendant's § 2255 Motion). "A presentence investigation report set Defendant's Guidelines range on the drug count at 87 to 108 months' imprisonment and further noted that he faced an additional minimum of 60 months on the gun count." *Malone v. Sproul*, SDIL No. 18-714-DRH, at Doc. 15-1. At sentencing, Judge Herndon reduced the offense level by two in recognition of the Sentencing Commission's then proposed amendments reducing drug quantities by two levels at 2D1.1, thus reducing Defendant's Guidelines range on the drug count to 70 to 87

months (Doc. 220, at pp. 27, 47). On April 24, 2014, Judge Herndon sentenced Defendant to a term of imprisonment of 70 months as to Count 1 and 60 months as to Count 2, to be served consecutively, and to be followed by a 3-year term of supervised release (Doc. 187; Doc. 193). Defendant's sentence was affirmed by the Seventh Circuit Court of Appeals on July 24, 2014 (Doc. 201-1).

At the time of Defendant's sentencing, *United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007), *since abrogated by Dean v. United States*, 581 U.S. 62 (2017), prevented the district court from reducing Defendant's sentence on the drug count to offset the statutory minimum from the gun count. *Malone v. Sproul*, SDIL No. 18-714, at Doc. 15-1. Defendant challenged the *Roberson* decision in a sentencing memorandum, and again on direct appeal. Malone then filed a motion under 28 U.S.C. § 2255 asserting an ineffective assistance of counsel claim. *See United States v. Malone,* SDIL No. 15-1079, at Doc. 1. This motion was denied, *United States v. Malone,* SDIL No. 15-1079, at Doc. 24, and the Seventh Circuit Court of Appeals denied a certificate of appealability. *Id.* at Doc. 34.

Following the denial of his § 2255 motion, the United States Supreme Court issued *Dean*, which abrogated *Roberson*. *See Malone v. Sproul*, No. 18-3385, 2021 WL 9473978, at *1 (7th Cir. Aug. 19, 2021) ("*Dean* clarified that the text of § 924(c) does not bar courts from considering the mandatory minimum from the gun offense when crafting a sentence for the predicate offense."). Defendant then filed a habeas petition under 28 U.S.C. § 2241 premised on *Dean*. The District Court dismissed the petition relying on Defendant's collateral-attack waiver from his plea agreement. *See Malone v. Sproul*, SDIL No. 18-714, at Doc. 3. On October 21, 2021, the Seventh Circuit affirmed the dismissal of Defendant's

§ 2241 petition, and further concluded that his *Dean* claim was independently foreclosed by *Worman v. Entzel*, 953 F.3d 1004, 1010 (7th Cir. 2020) (holding that *Dean* does not apply retroactively to collateral attacks). *See Malone*, 2021 WL 9473978, at *1. Defendant now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 256).

## The First Step Act of 2018

Compassionate release is an exception to the general rule that sentences imposed in criminal cases are final and may not be modified. Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it through the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion, provided they exhaust administrative rights prior to seeking relief in the courts. The Seventh Circuit has held that failure to satisfy the exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A) is an affirmative defense that must be raised by the Government or else it is waived. *See United States v. Sanford*, 986 F.3d 779, 781 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). Here, the Government does not challenge Defendant's exhaustion efforts (*See* Doc. 262) and therefore waives any argument concerning the same. Likewise, despite the sweeping appeal and collateral waivers in Defendant's plea agreement (Doc. 131), the Government does not argue that this waiver precludes his current motion. *See, e.g., United States v. Bridgewater*, 995 F.3d 591 (7th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 288 (Nov. 8, 2021).

The compassionate release statute provides that a court "may not modify a term of imprisonment once it has been imposed except" if "after considering the factors set

forth in section 3553(a) to the extent that they are applicable," it "finds that extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit recently observed that the proper consideration for a compassionate release motion proceeds in two steps:

> *First*, the prisoner **"must identify an 'extraordinary and compelling' reason warranting a sentence reduction."** *Thacker*, 4 F.4th at 576. *Second*, **"[u]pon a finding that the prisoner has supplied such a reason,"** the district court **"exercis[es] the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner."** *Id.*

*United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022) (citing *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021), cert. denied, 142 S. Ct. 1363 (2022)) (emphasis in original). The defendant bears the burden of showing that he is entitled to relief under the First Step Act. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

Where a motion is brought by the defendant, the Court may consider the Sentencing Commission's policy statements but is not bound by them. *Gunn*, 980 F.3d at 1180. This "working definition of 'extraordinary and compelling reasons'" includes circumstances surrounding the medical condition of the defendant, the age of the defendant, and family circumstances. *Id.* (citing U.S.S.G. 1B1.13 and its Application Notes). However, the Court is not constrained by the policy statement and Application Notes in U.S.S.G. 1B1.13; the Court merely uses the working definition to assist in exercising its discretion. *See Gunn*, 980 F.3d at 1180.

The Seventh Circuit recently confirmed that the "authority in the compassionate release statute 'only goes so far' and 'cannot be used to effect a sentencing reduction at

5

odds with Congress's express determination embodied in' other statutes. *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) (citing *Thacker*, 4 F.4th at 571). Thus, Section 3582(c)(1)(A) "does not permit—without a district court finding some independent 'extraordinary or compelling' reason—the reduction of sentences lawfully imposed before the effective date of the First Step Act's amendment to 18 U.S.C. § 924(c), an amendment which, by its terms, applies only prospectively." *Id.* (internal citations and markings omitted).

Further, the compassionate release statute "cannot be used to challenge a sentence on grounds the defendant could have advanced on direct appeal." *Id.* (citing *United States v. Martin*, 21 F.4th 944, 945 (7th Cir. 2021)). "Any other conclusion . . . would permit a defendant to 'circumvent the normal process for challenging potential sentencing errors, either through the direct appeal process or collaterally through a 28 U.S.C. § 2255 motion." *Id.* (citing *Thacker*, 4 F.4th at 571)). Therefore, changes in the law "cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction." *Brock*, 39 F.4th at 465; *Thacker*, 4 F.4th at 576 (At step one of a compassionate release motion, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the Fist Step Act's amendment to § 924(c)"). Similarly, "rehabilitation efforts" alone "cannot serve as a stand-alone reason" for compassionate release. *Peoples*, 41 F.4th at 842 (citing *United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021), cert. denied, 142 S. Ct. 2771 (2022)).

6

## Discussion

Malone argues that extraordinary and compelling reasons exist for his release for a multitude of reasons, generally categorized as: (1) reasons related to the Covid-19 pandemic and Defendant's alleged heightened risk of suffering severe illness or death from Covid-19 and new variants; and (2) circumstances related to the severity of his sentence.

As for the Covid-19 pandemic, Malone argues that he has a heightened risk of suffering severe illness or death from Covid-19 and new variants because of his hypertension, race, and prison conditions in general, including challenges posed by congregant living increasing the spread of Covid-19 and staffing shorts related to vaccine requirements. Malone also submits that he suffers from an ongoing psychological toll of feeling helpless to protect himself from infection and the potential long-term health damage that could be caused from infection. Malone avers that this psychological toll, in addition to the more dangerous prison conditions caused by staffing shortages, have resulted in his punishment becoming "harsher than originally expected." (Doc. 256, p. 22) (citing *United States v. Spano*, 476 F.3d 476 (7th Cir. 2007) (recognizing that sentencing judges can take into account the harshness of prison conditions when assessing the severity of a sentence)).

As for his arguments concerning his sentence, Malone maintains that the length of his sentence is inherently unfair and constitutes extraordinary and compelling circumstances for his release. Malone claims that due to the changing public opinion on marijuana offenses, he would "surely be sentenced to less than 70 months for the drug

7

conspiracy charge had he been sentenced today." (Doc. 256, p. 30). Defendant theorizes that on average 93.3% of inmates receive a downward variance for marijuana trafficking offenses (Doc. 256, p. 30). He also postulates that the sentencing court would have decreased his sentence based on *Dean*. Defendant further argues that his sentence was not commensurate with his "minor role" in the conspiracy and is inherently unjust when compared to his co-conspirators' sentences. Finally, Defendant contends that he is not a danger to the safety of the community and cites to the favorable comments made by Judge Herndon at his sentencing hearing, in addition to his conduct in prison, and the numerous letters of support from his friends and family.

The Government opposes Malone's motion, arguing that Malone failed to establish extraordinary and compelling reasons for his release, and because Malone declined to receive the Covid-19 vaccine (*See, e.g.*, Doc. 256-17, p. 19; Doc. 256-18, p. 14). The Government also argues that his sentence continues to remain appropriate and that Judge Herndon's explanation at sentencing concerning Malone's mitigating factors remain relevant today to reflect the seriousness of his offense. Specifically, the Government points to Judge Herndon's rejection of Defendant's arguments concerning the advisory guideline range and relaxed punishments concerning marijuana.

Malone does not satisfy any of the factual predicates listed by the Sentencing Commission as constituting "extraordinary and compelling reasons" justifying compassionate release. Specifically, he has not established that he is suffering from a terminal illness or other condition from which he is not expected to recover, he is under 65 years old, and he does not indicate any death or incapacitation in his immediate family

(Doc. 256-7) (indicating that Malone is 48 years old); (Doc. 256-8) (indicating that Malone is at a Care Level 2 – Stable Chronic Care, and Care Level 1 for mental health; and that he "has no medical restrictions"). While Malone cites his hypertension as a chronic medical condition, nothing in his medical records suggest that this condition is terminal. Instead, his medical records indicate that his hypertension is currently managed with medication (Doc. 262-1, p. 6; Doc. 262-2, pp. 1, 10, 31; Doc. 256-10, p. 6). In October 2021, Malone's medical provider indicated that his hypertension "has been controlled" (Doc. 262-2, p. 10). Malone also cites to the psychological toll and feeling of helplessness caused by the Covid-19 pandemic (Doc. 256). However, he did not provide any medical records to support this allegation. Instead, in October 2021, he self-reported on a Health Intake Assessment form that he did not have a mental health condition (Doc. 262-2, p. 114; *see also* Doc. 262-2, pp. 50, 57).

In the unusual circumstances of the Covid-19 pandemic, courts have been willing to look beyond the enumerated list of extraordinary and compelling reasons listed by the Sentencing Commission, particularly where underlying medical conditions and other risk factors make defendants particularly susceptible to Covid-19. Here, Malone's hypertension and the mental health conditions caused by the "psychological toll" Malone claims to suffer may increase his vulnerability to Covid-19. According to the Centers for Disease Control ("CDC"), persons with hypertension and mental health conditions may increase the likelihood of getting "very sick" from Covid-19.[2] Similarly, the CDC

---

[2] *See Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 7, 2022).

recognizes that Malone's race and current congregate living situation may also increase his susceptibility to Covid-19.[3]

The Government, however, argues that Malone's increased risk is largely self-inflicted because Malone has refused to receive the Covid-19 vaccine (*See* Doc. 262). Indeed, the Seventh Circuit has reasoned that a "prisoner who remains at elevated risk [for Covid-19] because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *United States v. Ugbah*, 4 F. 4th 595 (7th Cir. 2021) (including a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine); *see also United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022).

Thus, "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary compelling' reason for immediate release. *United States v. Newton*, 37 F.4th 1207, 1208 (7th Cir. 2022) (citing *Broadfield*, 5 F.4th at 803); *United States v. Young*, No. 22-2219, 2022 WL 17076692, at *1 (7th Cir. Nov. 18, 2022). However, the *Broadfield-Ugbah* "safety valve permits federal prisoners to make motions with newly proffered individualized facts based on concerns like [variant] breakthrough cases, long COVID, or the relative inefficacy of vaccines for

---

[3] *See Id.* (acknowledging that people from certain racial and ethnic minority groups and people who live in congregate living settings may face more barriers in accessing health care generally and may also be at an increased risk of getting very sick or dying from Covid-19).

10

certain vulnerable prison populations, like the immunocompromised." *Newton*, 37 F.4th at 1209 (citing *Rucker*, 27 F.4th 563 and *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022)).

Malone acknowledges that he refused to receive the Covid-19 vaccine, however he argues that he denied the vaccine for "firmly-held religious reasons", citing his Moorish religion. Malone argues that he should not be punished for his refusal to receive the Covid-19 vaccine based on a religious exemption because such right is necessarily protected by the United States Constitution (Doc. 256). As mentioned above, the Seventh Circuit permits federal prisoners to proffer individualized facts to show that they are unable to receive or benefit from a vaccine. *See United States v. Ugbah*, 4 F. 4th 595 (7th Cir. 2021). Some district courts, however, have reasoned that this safety valve only applies to inmates who are *medically* unable to receive or benefit from the vaccine. *See United States v. Crockett*, No. 19-CR-86, 2022 WL 1186571 (E.D. Wis. Apr. 20, 2022), at *7 (collecting cases). The Seventh Circuit has not directly addressed this issue or decided whether to recognize a religious exemption to a vaccination mandate. *Id.* However, the issue here is not whether to do so. Indeed, the issue before the Court is whether Defendant has identified an extraordinary and compelling reason for his immediate release. He has not.

Even accepting the cumulative effect of Malone's medical conditions and risk factors, the record does not support finding an extraordinary and compelling reason for his release. Malone's medical records confirm that he has been receiving medical care and his hypertension is well managed. The Court also notes that Malone's health

conditions do not appear to impact his ability to engage in normal activities of daily living. (*See, e.g.,* Doc. 256-10, p. 5) (In July 2021, Malone denied having any symptoms related to hypertension, and prior symptoms were reported as resolved). Further, his medical records list his present care level as "stable chronic care" (Doc. 256-8).

Moreover, his conditions do not appear to have caused him to experience and particularly adverse long-term effects when he previously contracted Covid-19. While neither party addressed this issue with the Court, Malone's medical records indicate that he was previously infected with Covid-19. Indeed, in January 2021, Malone reported experiencing aches and pains in his organs after having Covid-19 (Doc. 256-18, p. 18). He again expressed concerns following his Covid-19 infection on May 8, 2021 (Doc. 262-2, p. 125). However, by May 20, 2021, medical records indicated that he had recovered from Covid-19 (Doc. 256-10, p. 12). Thereafter, Malone's medical records do not show any new complaints concerning Covid-19. On July 14, 2021, Malone was seen for a follow-up appointment. At that time, he denied any symptoms, and his prior symptoms were reported as resolved (Doc. 256-10, p. 5). Nevertheless, while the Court understands that Malone is concerned that he is vulnerable to the virus (whether by initial infection or reinfection), there is no basis in his medical records to suggest that his health conditions, either in concert with or independent of Covid-19, constitute an extraordinary and compelling reason that would justify relief at this time.

Malone's arguments concerning his increased risk of susceptibility to Covid-19 due to prison conditions also do not constitute an extraordinary and compelling reason for a sentence reduction presently. At the time he filed his motion, Malone was

incarcerated at USP Marion (Doc. 256). However, current records from the Federal Bureau of Prisons ("BOP") indicate that he is now located at Memphis FCI.[4] While USP Marion is currently operating at an Operational Level 3, indicating that its medical isolation rate is greater than 7%, facility vaccination rate is less than 50%, or the community transmission rate is greater than 200 per 100,00 over the last 7 days[5], Memphis FCI is currently operating at an Operational Level 1, which indicates that its medical isolation rate is less than 2%, its facility vaccination rate is greater than or equal to 65%, and the community transmission rate is less than 50 per 100,000 over the last 7 days.[6]

Further, both Marion and Memphis currently have zero inmates who have tested positive for Covid-19. *See Coronavirus*, BOP, https://www.bop.gov/coronavirus (last accessed Dec. 7, 2022). Marion currently has one staff member who tested positive for Covid-19, but Memphis has zero. *Id.* Both facilities report 2 inmate deaths from Covid-19. *Id.* Marion further reports that 642 inmates and 82 staff members have recovered from an infection, with Memphis reporting 223 inmates and 127 staff members have recovered from an infection. *Id.* Additionally, the Bureau of Prisons has implemented a Modified Operations Plan to combat the spread of COVID-19 in all of its facilities.[7] Thus,

---

[4] *See Find an Inmate*, Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc (last accessed Dec. 7, 2022).
[5] *See Coronavirus*, BOP, https://www.bop.gov/coronavirus (last accessed Dec. 7, 2022); *Modified Operations Plan*, BOP, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed Dec. 7, 2022).
[6] *Id.*
[7] The Modified Operations Plan is available at https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed Dec. 7, 2022).

the risk of contracting Covid-19 at USP Marion, and Defendant's current location, Memphis FCI, remains low.

Finally, Malone's arguments concerning his post-*Dean* sentence disparity is not an extraordinary and compelling reason for release. While Malone does not try to argue that Section 401 of the First Step Act is retroactive (it is not), he does observe that were he sentenced today, the sentencing court would no longer be bound by *Roberson* and could thus consider the mandatory minimum from his gun offense when crafting his sentence. *See, e.g.*, *Malone*, 2021 WL 9473978, at *1 (citing *Dean*). He further argues that changing public opinion on marijuana offenses would surely decrease his drug conspiracy charge had he been sentenced today (Doc. 256, p. 30). Malone cites to downward variance trends for marijuana trafficking offenses (Doc. 256, p. 30). He also postulates that his sentence is inherently unjust when considering his "minor role" in the conspiracy, and his co-conspirators' sentences. Indeed, one of his co-conspirators has allegedly served his entire sentence, and the conspiracy's leader is allegedly due to be released shortly after Malone.

These arguments, alone, or in combination with his Covid-19 related reasons do not amount to an extraordinary and compelling reason to justify his release. Indeed, Judge Herndon adequately addressed most of these arguments at Malone's sentencing, and the Court finds no reason to depart from those findings. In addressing the changing public opinion on marijuana offenses, Judge Herndon stated:

> It's a large marijuana distribution, and it may be a trend for people, for consumers to smoke a little bit of marijuana here and there, but that doesn't mean anything when it comes to distributing this kind and this volume of marijuana. That's not what Colorado's doing, that's not what the State of Washington is doing. They are not legalizing huge distribution of

> marijuana under any circumstances like this, that's for sure. So when one wants to talk about the trends around the country, you will not find any location or any forum, any venue legalizing this kind of activity. It just doesn't exist.

(Doc. 220, pp. 44-45). Even accepting Malone's theory on changing public opinion for marijuana offenses, Malone's drug charge involved more than 1000 kilograms of marijuana. Judge Herndon was rightfully concerned with the large quantity of drugs, and the Court perceives no indication in the record to depart from those findings, or to suggest that the findings would be different if he were sentenced today

Similarly, Judge Herndon adequately explained his rejection of Malone's "minor role" theory at sentencing:

> As far as the issue with respect to the minor role, Mr. Fein is correct, this is a discretionary matter for the Court. In this situation, Mr. Malone, as Mr. Fein concedes, well knew the activities taking place in his house, used by his co-conspirators to bring in large amounts of marijuana, used the house to count large sums of money. He was involved in or he was observed being there and perhaps even involved in counting the money. Even though his role was different than Mr. Shields and Mr. Manning, he was – his allowing the use of his house as he did was a critical role in this conspiracy, and so the Court will not grant a minor role adjustment under the guidelines for his role in this conspiracy.

(Doc. 220, p. 13). Thus, while all parties agreed that Malone was not the leader of the conspiracy, by permitting his house to be used by his co-conspirators for conspiracy activities, Judge Herndon found that Malone had a "critical role" in the conspiracy. (Doc. 220, p. 13). Again, there is no indication in the record to depart from those findings, or to suggest that the findings would be different if he were sentenced today.

Finally, Judge Herndon clearly articulated a crucial distinguishing factor between Malone's sentence and those of his co-conspirators, namely that he was the only defendant also charged with a gun crime:

> The gun -- the firearm charge sets Mr. Malone separate and apart from Mr. Manning and Mr. Shields. And to say that when one combines the two counts together and the added -- the addition of one with the other, and, therefore, the total sentence, is a travesty. It just isn't the proper way to look at this case. The additional 60 months for Mr. Malone sets him clearly apart from Manning and Shields. There's just no other way to look at it. The only way to compare Mr. Malone to Mr. Manning or Mr. Shields is to look only at Count 1, as far as I'm concerned, because that's where he matches up with Manning and Shields.

(Doc. 220, p. 44). Judge Herndon also reasoned that the structure of the penalty Malone received for his firearm charge likely resulted from Congress' desire to send the message that guns should not be used in drug cases:

> [M]ost of the time the facts are just exactly what we have here. The gun is near the drugs and in a drawer or in the top of a closet or in the bottom of a closet or something of that nature, but they're not -- the gun has not actually been pulled, nobody's actually been harmed. But we know anecdotally that guns are often used in drug offenses. I think those cases usually end up in state court, but that's why I presume that Congress is interested in at least sending the message that they don't want drugs -- they don't want guns used in drug cases, and they construct such a statute. And when they drafted this statute, passed this statute, they didn't tell judges such as me, *Now, you can go below the five years if you want, if you think that you have somebody in front of you that's better than the average person.* They simply said, *Five years on up*. That's what the law is.

(Doc. 220, pp. 43-44).

More importantly, any disparity between the results of the different sentencing guidelines does not amount to an extraordinary and compelling reason for sentence modification alone, or in combination with the totality of the circumstances. *See United*

16

*States v. Thomas*, No. 20-2683, 2021 WL 1711808 (7th Cir. Apr. 30, 2021) (affirming the district court's finding that defendant's motion based on post-*Johnson* sentence disparity was not an extraordinary and compelling reason for compassionate release). Congress chose not to make the First Step Act retroactive, and this Court will not use compassionate release to do what Congress did not.

Because Malone has not established an extraordinary and compelling reason for his relief, the Court need not consider the sentencing factors in 18 U.S.C. § 3553(a). Nevertheless, even if Malone could establish an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A), the sentencing factors continue to outweigh any considerations of compassionate release here. *See United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns.").

Although Malone is correct that Judge Herndon did not believe he posed a recidivism risk or danger to the public and observed many favorable factors to suggest that Malone will successfully reintegrate back to his community, he emphasized the need of his sentence to reflect the seriousness of the crime (Doc. 220, pp. 46-47). While Malone's rehabilitation efforts are commendable, these efforts alone are not enough to revisit a sentence under 18 U.S.C. § 3582(c)(1)(A). *Peoples*, 41 F.4th at 842 (citing *Hunter*, 12 F.4th at 563). ("[R]ehabilitation efforts" alone "cannot serve as a stand-alone reason" for compassionate release). Instead, his sentence remains necessary to reflect the seriousness of his offense. As Judge Herndon aptly explained at his sentencing, Malone's offenses

departed substantially from his co-conspirators for one aggravating reason: Malone's use of guns during the drug conspiracy, and "Congress is interested in at least sending the message that they don't want drugs -- they don't want guns used in drug cases." (Doc. 220, p. 43).

## Conclusion

In sum, considering the totality of the record before the Court, Malone has not established an extraordinary and compelling reason for his relief.  Under these facts, compassionate release is not appropriate.  Defendant's Motion for Compassionate Release (Doc. 256) is therefore **DENIED**.

**SO ORDERED.**

Dated: December 16, 2022

_____
DAVID W. DUGAN
United States District Judge